## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Tennyson WALTERS and Karlene WALTERS,<br><br>     **Appellants,**<br><br> **v.**<br><br>Nahid TEHRANI,<br><br>     **Appellee.** | Civ. No. 2:13-6544 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

   Appellants Tennyson Walters and Karlene Rawle-Walters appeal from an order by Judge Rosemary Gambardella of the United States Bankruptcy Court for the District of New Jersey. (Notice of Appeal, ECF No. 1.)[1] Judge Gambardella granted summary judgment to Appellee Nahid Tehrani and declared the Walterses' debt to Tehrani to be non-dischargeable based upon a finding of actual fraud by the Walterses. Judge Gambardella also denied the Walterses' motions to compel discovery, to dismiss the case, and to impose sanctions for an alleged violation of the automatic stay. *See* Bankr. Dec. 6, 2012 Order, *Tehrani v. Walters et al.*, Adv. No. 10-1945 (RG), ECF ("Adv. 10-1945 ECF") No. 23.[2]

   For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED.

---

[1]  Judge Gambardella's order was dated December 6, 2012 and entered on the docket on December 7, 2012.

[2]  This entry and other docket entries for the bankruptcy case and for adversary proceedings thereunder are available through the Bankruptcy Court's ECF filing system.

## I.   BACKGROUND

### A. Facts[3]

This case arises out of loan transactions between Tehrani and the Walterses. The Walterses owned several entities that invested in real estate properties. (Transcript of Oral Bankruptcy Court Opinion ("Bankr. Op.") 4:23–25).[4] Karlene Walters is an attorney of the State of New Jersey and the principal of Karlene Rawle-Walters, Attorney at Law, P.C., a corporation engaging in legal practice and investment activities. Bankr. Op. 4:25–5:6.

Tehrani alleged in bankruptcy court that she made several loans to the Walterses and their real estate entities. The Walterses allegedly promised Tehrani that they would secure the loans with a first lien on properties they purchased with the loan proceeds. *Id.* 5:17–21. Karlene Walters, as attorney, allegedly promised to duly record the liens and obtain title insurance on the properties, but did not do so. *Id.* 5:21–6:7. Instead, she deceived Tehrani by, *inter alia*, sending her fraudulent notes, mortgages, and insurance policy documents; removing Tehrani's name as an insured from policy documents; not recording Tehrani's mortgages; and inducing Tehrani to make additional loans by fraudulently representing that she would hold purchase money mortgages or first lien positions on certain property. *Id.* 6:24–7:1; 8:2–4; 8:8–13; 9:10–13; 10:8–17; 10:24–11:2; 11:20–12:6.

The Walterses responded to these allegations by asserting that

---

[3]   Rather than setting forth a Statement of Facts, the Walterses incorporate by reference the facts set forth in nine different submissions to other courts, as well as the facts outlined in their Preliminary Statement. (Walterses Br. 18–20.) Tehrani does not include a distinct statement of facts in her brief. The facts set forth here are taken from Judge Gambardella's opinion, and confirmed by review of the record.

[4]   Bankruptcy Judge Rosemary Gambardella read her opinion into the record on November 16, 2012. The transcript is referred to herein as "Bankr. Op." It may be found at Adv. 10-1945 ECF No. 3. (RG).

relevant secured loans were fully repaid and offering various explanations for their failure to record certain mortgages. *Id.* 12:11–13:23.

### B. Procedural history

On March 17, 2008, Tehrani and other parties first brought a complaint against the Walterses and their real estate entities in the New Jersey Superior Court, Bergen County, Law Division. Bankr. Op. 13:24–14:4. In that state court case, the Honorable Elijah J. Miller, J.S.C., suppressed the defenses of the Walterses because they had repeatedly failed to fulfill their discovery obligations.

First, on September 11, 2009, Judge Miller ordered the suppression of the Walterses' defenses without prejudice and extended the discovery deadline. *Id.* 14:7–9. Then, on November 28, 2009, Judge Miller issued another order, in which he denied the Walterses' motion to vacate his September 11, 2009 order but also denied Tehrani's motion to suppress the Walterses' answers. *Id.* 14:9–13. Then, in a December 11, 2009 addendum to an order dated November 28, 2009, Judge Miller noted that the Walterses were "still delinquent in regard to the requested discovery" and that there was "a bona fide dispute as to the adequacy of the answers which must be determined before a disposition of either a dismissal with prejudice or a motion to restore the dismissed pleadings." *Id.* 14:14–19. He ordered the Walterses to "provide more specific answers within 25 days hereof . . . or face sanctions under R. 4:23-2b." *Id.* 14:20–23. Finally, in an order filed January 22, 2010, Judge Miller suppressed the Walterses' defenses with prejudice for failure to comply with discovery obligations and for failing to serve Tehrani with fully responsive answers to her discovery request. *Id.* 14:24–15:6.

In an addendum to that January 22, 2010 Order, Judge Miller explained the Walterses' bad faith failures to comply with discovery

orders as follows:

> This matter arises out of a breach of contract action in
> regard to a real estate closing. The Court would like to note
> that the discovery end date in this matter was November 17,
> 2009 and that a trial date has not been scheduled in this
> matter. This is the second time the defendants have
> submitted a motion requesting that the Court vacate the
> September 11, 2009 suppression order and reinstate the
> defendants' defenses. Further, this Court directed
> defendants to provide more specific answers within 21 days
> of this Court's November 20, 2009 order or face sanctions.
> However, to date, the defendants are still delinquent in
> regard to the requested discovery and the defendants'
> moving papers again failed to include an affidavit reciting
> that the discovery asserted to have been withheld has been
> fully and responsively provided. Critically, defendants have
> failed to provide an accounting which this Court agreed with
> plaintiffs is a material deficiency. This matter arises out of a
> contract dispute regarding a real estate closing and funds
> which are allegedly due to the plaintiffs. An accounting is
> arguably necessary to make such a determination.

*Id.* 15:7–16:2.[5] The Walterses moved for reconsideration of Judge Miller's

order suppressing their defenses with prejudice, and Judge Miller denied

their motion on March 5, 2010. *Id.* 16:3–6; *see* Super. Ct. Mar. 5, 2010

Order, *Tehrani v. Pembroke Holdings, LLC, et al.*, No. BER-L-2160-08

("Super. Ct. Mar. 5, 2010 Order").[6]

On April 21, 2010, the Walterses filed a Chapter 7 petition in

---

[5]     Judge Miller's decisions here are consonant with the procedures
prescribed by the New Jersey Rules of Court. Initially, a discovery default may
lead to dismissal or suppression without prejudice. If the default remains, the
aggrieved party may move for an order of dismissal or suppression with
prejudice, which may be granted if the adversary does not respond with an
affidavit demonstrating that the discovery has been furnished or, after due
diligence, cannot be furnished. N.J. Ct. R. 4:23-5.

[6]     A copy of Judge Miller's order was attached as Exhibit 58 to the
Walterses' Response to Tehrani's Motion for Summary Judgment, dated June
14, 2011, in the adversary proceeding before Judge Gambardella, available
through the Bankruptcy Court's ECF filing system: Adv. 10-1945, ECF No. 12-
6.

bankruptcy court, which automatically stayed the pending state court proceedings. *Id.* 16:7–11. In the Schedules to their petition, the Walterses listed the pending state court lawsuit as well as properties related to the state court litigation and loan obligations owed to Tehrani. *Id.* 16:21–24. On June 10, 2010, Tehrani moved for the bankruptcy court to abstain in favor of the pending state court proceedings, arguing that the relevant issues could be fairly resolved in state court. *Id.* 17:16–22. The Walterses opposed the motion, arguing that Tehrani was improperly attempting to forum shop and that the bankruptcy court should resolve the issues raised in the state court case. *Id.* 17:24–18:2.

The bankruptcy court granted the abstention motion and, on July 16, 2010, lifted the automatic stay to allow the state court case to proceed to final judgment. *Id.* 18:3–5; *see* Bankr. Pet. 10-22037 ECF No. 25. In that order, Judge Gambardella specified that

> the enforcement of any Final Judgment and the issue of non-dischargeability as to any conclusions of law and findings of fact made in determining the Final Judgment are reserved by the Bankruptcy Court for final adjudication, and Tehrani will not proceed in any forum but for the Bankruptcy Court with respect to any action taken after the entry of Final Judgment by Judge Miller.

Bankr. Pet. 10-22037 ECF No. 25; Bankr. Op. 18:5–12.

On August 25, 2010, in the state proceeding, Judge Miller conducted a proof hearing on the issues of damages and fraud. Bankr. Op. 18:18–20:2. After that hearing, Judge Miller found that the Walterses had engaged in a pattern of fraudulent activity, transferring properties among family members and their owned entities for as little as $10 and violating their promises to Tehrani. *Id.* 19:12–21:7. Judge Miller reasoned that "clearly [this fraud] requires penetrating the corporate veil and proceeding against [the Walterses] personally and individually and severally." *Id.* 21:15–19 (citing Tr. of Super. Ct. of N.J. Hr'g, *Tehrani et al.*

*v. Pembroke Holdings, LLC,* et al., Civ. No. L-2160-08, Aug. 25, 2010) ("Proof Hearing Tr.").[7] As for the Walterses' debt, Judge Miller found it to be "possibly if not completely non-dischargeable, citing the bankruptcy code 11 U.S.C. Section 523(a)(2)." *Id.* 20:22–21:3.

On September 7, 2010, Judge Miller issued an order of final judgment by default. *Id.* 21:9–11.[8] Judge Miller held that the Walterses, along with the other defendants, were jointly and severally liable to Tehrani for compensatory damages (1) based on breach of contract, piercing the corporate veil, and fraud, for $1,827,337.34, plus costs of suit; and (2) based on professional negligence (legal malpractice), piercing the corporate veil, and fraud, for $1,747,026.50, plus costs of suit. *Id.* 21:11–25. Judge Miller also ordered the Walterses and their professional associates to pay costs and attorneys' fees in the amount of $42,764.72. *Id.* 21:25–22:3.

Meanwhile, on July 27, 2010, in bankruptcy court, Tehrani had filed an adversary proceeding against the Walterses seeking to have the debt declared non-dischargeable. Bankr. Op. 18:13–17; *see* Adv. 10-1945 ECF No. 1. Tehrani alleged (1) that the Walterses' "conduct constituted a breach of the note and mortgage for non-payment of the monthly mortgage payments, as well as breach of the implied covenant of good faith and fair dealing"; (2) that the Walterses intentionally breached their duty to ensure that Tehrani's mortgage loans would receive a first lien

---

[7]     The transcript of the hearing before Judge Miller was attached as Exhibits P53-1, P53-2, P53-3, and P-53-4 to the Certification of Joseph V. Meyers, dated June 6, 2011, submitted in support of Tehrani's motion for summary judgment in the adversary proceeding before Judge Gambardella: Adv. 10-1945 ECF No. 8-16, 8-17, 8-18, 8-19. I will refer to it as the "Proof Hearing Tr."

[8]     A copy of Judge Miller's order was attached as Exhibit P-52 to the Certification of Joseph V. Meyers, dated June 6, 2011, submitted in support of Tehrani's motion for summary judgment in the adversary proceeding before Judge Gambardella, available through the Bankruptcy Court's ECF filing system: Adv. 10-1945 ECF No. 8-15.

priority and title insurance; (3) that Karlene Walters knowingly breached her duty to Tehrani by misappropriating funds from an attorney trust account contrary to her promises to Tehrani and professional legal obligations to Tehrani; and (4) that the Walterses "have concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information," including "an accounting of monies loaned to them." Bankr. Op. 23:15–24:24. Tehrani sought an order of non-dischargeability of the Walterses' debt under 11 U.S.C. § 727(a)(2)(A) & (B), and (a)(3)–(5), as well as attorneys' fees and costs. *Id.* 24:25–3.

The Walterses generally denied the first, second, and third counts. They responded to the fourth by alleging that Tehrani and her attorney, Joseph V. Meyers, misled the state court by falsely claiming that the Walterses had not provided Tehrani with accounting information, when in fact the Walterses had provided that information. *Id.* 25:13–22.

On May 6, 2011, in the adversary proceeding, Tehrani filed for summary judgment, seeking to have the Walterses' debt declared non-dischargeable. Her motion attached the record from Judge Miller's proof hearing. *Id.* 26:12–17. Tehrani argued that the bankruptcy court should give collateral estoppel effect to Judge Miller's finding of fraud. *Id.* 26–27.

The Walterses argued that: (1) collateral estoppel should not be given to the state court findings because they were based on information that Tehrani and her attorney either misrepresented or withheld, *id.* 29:14–22; (2) the state court findings were invalid because Judge Miller did not consider the Walterses' motion to vacate judgment, *id.* 30:1–9;[9]

---

[9]    On September 3, 2010, the Walterses filed a motion asking Judge Gambardella to "Allow State Court to View Opposition Papers and Debtors to Appeal State Court's Order." Bankr. Pet. 10-22037 ECF No. 44. "Opposition papers" seems to be a reference to the Walterses' proposed state court motion for relief from judgment pursuant to N.J. Ct. R. 4:50-1. *See id.* ECF No. 44-4. On December 1, 2010, Judge Gambardella denied the Walterses' motion. *See* Bankr. Pet. 10-22037 ECF No. 49. No direct appeal was filed from that denial,

(3) res judicata and collateral estoppel should not apply because the state court judgment was not on the merits, because Judge Miller had suppressed the Walterses' defenses based on bad faith conduct in discovery, *id.* 30:21–31:14; and (4) issues of material fact remained, including whether the Walterses committed fraud and whether Tehrani and her counsel acted illegally or perpetrated a "cover-up" to obtain the state court judgment, *id.* 30:10–20. The Walterses asserted that they did not commit fraud and that Tehrani's loans were all repaid in full. *Id.* 31:25–32:22.

The Walterses also cross-moved for Judge Gambardella (1) "to compel discovery or dismiss the case for failure to provide discovery or for entry of default and default judgment, and for contempt of court, sanctions and damages for failure to provide discovery"; (2) "for contempt of court, sanctions and damages, against Nahid Tehrani and Joseph V. Meyers Esq., for violation of the automatic stay and for violation of Judge Gambardella's bankruptcy court order dated 7/16/10"; and (3) "for relief from judgment or order." *Id.*; *see* Adv. 10-1945 ECF No. 11.

Judge Gambardella granted summary judgment for Tehrani and entered an order declaring the Walterses' debts to be non-dischargeable. In so doing, Judge Gambardella gave collateral estoppel effect to the findings of the state court. Judge Gambardella also denied the Walterses' various cross-motions.

## II.   STANDARDS OF REVIEW

This District Court has jurisdiction to hear appeals of final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). A district court reviews "'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its

---

but the Walterses contend that it rendered reliance on the state court findings unfair. I discuss that contention at p. 20, *infra.*

exercise of discretion for abuse thereof.'" *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quotation and citation omitted)). A district must separately analyze mixed findings of fact and conclusions of law, and appropriately apply the applicable standards—clearly erroneous or *de novo*—to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir. 1981)). "The district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

"Because the applicability vel non of collateral estoppel is a question of law, we ordinarily exercise plenary review over a district court's collateral estoppel analysis." *Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 247 n.3 (3d Cir. 2010) (in context of summary judgment). An award of summary judgment is likewise given *de novo* review, employing the same standard that applied in the trial-level court. *See Torre v. Liberty Mut. Fire Ins. Co.*, No. 14-2733, 2015 WL 1344684 at *1 n.3 (3d Cir. Mar. 26, 2015) (citing *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005)). That standard provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[10] *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Daniels v. Sch. Dist. Of Phila.*, No. 14-1503, 2015 WL 252428, at *6 (3d Cir. Jan. 20, 2015).

A motion for sanctions is generally reviewable for abuse of discretion, but the issue here is primarily one of law as to the scope of

---

[10]   Fed. R. Civ. P. 56 is made applicable to the bankruptcy court by Fed. R. Bankr. P. 7056.

the automatic stay, reviewable *de novo. See Koon v. United States*, 518 U.S. 81, 100 (1996) (a court "by definition abuses its discretion when it makes an error of law"); *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819 (3d Cir. 2006) (abuse of discretion may encompass "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact").

## III.   ANALYSIS

The Walterses have filed a notice of appeal from Judge Gambardella's Order for Final Judgment Declaring the Debt to be Non-Dischargeable as against Tennyson Walters and Karlene A. Rawle-Walters, dated December 6, 2012. (*See* Notice of Appeal, ECF No. 1.) In addition, the Walterses assert that Judge Gambardella's decisions were "predetermined," by which they mean that Judge Gambardella's rulings were infected by bias against them. (*See, e.g.*, Walterses Br. 29, ECF No. 3.)[11]

---

[11]    The two issues stated in text are the focus of this appeal, as they relate to the actual order from which the appeal was taken. The Walterses quarrel with many rulings of the bankruptcy court, which they did not appeal. (*See* Walterses Br. 1–3.) Except as they bear on the issues of dischargeability or judicial bias, I do not address the Walterses' additional arguments regarding the following: (1) Judge Gambardella's order regarding abstention and lifting the stay of state court proceedings (Walterses Br. 28–29 ("Point II")); Bankr. Pet. 10-22037 ECF No. 25; (2) Judge Gambardella's order denying the Walterses' motion to allow the state court to view their opposition papers (Walterses Br. 29–36 ("Point III")); Bankr. Pet. 10-22037 ECF No. 49; (3) Judge Gambardella's failure "to compel [Tehrani] to completely address the allegations of tax fraud against her and to disclose any attempts to alter her tax liability that would contribute to spoliation of evidence in this case" (Walterses Br. 40–41 ("Point VI")); (4) Judge Gambardella's refusal to vacate the state court's judgment "because legal malpractice judgment in state court is invalid" (*Id.* 42–45 ("Point VII")); and (5) Judge Gambardella's order denying the Walterses' "motion to amend findings or for additional findings or to alter or amend judgment" or her denial of the Walterses' "motion for reconsideration of judicial decision and to grant appropriate ruling under Fed. R. Bankr. 7052, 9023, and 9024" (*Id.* 48–50); *see* Adv. 10-1945 ECF No. 30. The Walterses' two motions for reconsideration are also not now on appeal. *See* Adv. 10-1945 ECF Nos. 25, 32. I note, however, that those motions do not appear to raise any new arguments.

## A. Judicial Bias and Disqualification

Because it potentially affects all issues, I first address the Walterses' accusation of judicial bias. They claim that Judge Gambardella was prejudiced, based on her handling of the case and her familiarity with Tehrani's attorney. The facts, however, do not raise any reasonable inference of bias.[12]

A judge is required to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned" or "where [she] has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). The Third Circuit has explained the standard for evaluating that issue as follows:

> A party seeking recusal need not show actual bias on the part of the court, only the possibility of bias. . . . Under § 455(a), if a reasonable [person], were [that person] to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse.

> Generally, beliefs or opinions which merit recusal must involve an extrajudicial factor. [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (internal quotations and citations omitted). *See also Liteky v. United States,* 510 U.S. 540, 555 (1994).

The Walterses argue that "[a] review of the relationships in the bankruptcy case raises issues of bias and abuse of discretion." (Walterses Br. 6.) They cite the following facts: Tehrani's counsel, Vincent

---

[12]     The Walterses did not move for recusal in the bankruptcy court. Technically, the argument would be that Judge Gambardella committed plain error in not recusing herself *sua sponte.* I set that aside.

D. Commisa, Esq. ("Attorney Commisa"), is related to the late Vincent J. Commisa ("Judge Commisa"), who was the first Chief Judge of the United States Bankruptcy Court for the District of New Jersey. (*Id.*) (I take judicial notice that Judge Commisa died in 1990.) The presiding bankruptcy judge in this case, Rosemary Gambardella, clerked for Judge Commisa. (*Id.*) (According to online sources, her clerkship occurred in 1979–80.) Judge Gambardella was also the President of the Bankruptcy Inn of Court, an organization "formed to honor [Judge Commisa] and some other jurists." (*Id.*) Finally, "[i]t would be reasonable to assume therefore that Judge Gambardella and [Attorney Commisa] know each other very well," because Attorney Commisa "has practiced in bankruptcy court for over two decades." (*Id.* 6–7.)

Even assuming all of the above is true, it comes nowhere near a showing of judicial bias requiring disqualification. It is unreasonable to infer bias based on Attorney Commisa's regular practice of bankruptcy law in this district. Indeed, if an attorney could not litigate more than a certain number of cases in a particular court without creating an inference of bias, the judicial system might grind to a halt. And any connection Judge Gambardella had with Judge Commisa, who died 25 years ago, is similarly innocuous absent any further proof of bias. The Walterses' attribution of bias based on the judge's familiarity with, or connection to, either of the Commisas is wholly unpersuasive.

The Walterses also cite the "irregularit[y]" of Judge Gambardella's having allegedly decided seventeen separate "pleadings and motions" in favor of Tehrani. (*Id.* 7; 20–21.) A losing streak, without more, is not suggestive of bias; it ordinarily reflects nothing more or less than the judge's view of the merits. At any rate, to give rise to recusal, a source of bias must generally be extrajudicial. *See Selkridge*, 360 F.3d at 167. "Bias" does not encompass an opinion about the merits of a case formed on the basis of the record of that case.

Finally, the Walterses detect a nefarious "pattern from the series of pleadings by plaintiff and the corresponding rulings by the court." They refer to the bankruptcy court's limited lifting of the stay in favor of the state proceedings, followed by its adoption, *via* collateral estoppel, of the state court's findings of fraud. All of this, the Walterses argue, was a complex scheme orchestrated by the bankruptcy court so that "[a]ll of the ducks would then be in line for the bankruptcy court to enter a nondischargeable judgment against the defendant by reason of fraud." (Walterses Br. 8.)

There is nothing erroneous, let alone improper, about the bankruptcy court's application of settled legal principles of abstention and its limited lifting of the automatic stay. Those doctrines are designed to avoid simultaneous proceedings in two courts on the same facts and issues. Those concerns are particularly acute where, as here, a party runs to bankruptcy court following adverse rulings in a state court case that has been pending for some time. Restarting the case in a second, parallel forum would risk inconsistent judgments, waste valuable resources, and unfairly burden the parties.[13]

The Walterses do not raise any substantial arguments of bias, let alone extrajudicial bias. I proceed to the merits of their appeal.

### B. Collateral Estoppel Effect of the State Court Findings of Fraud

The Walterses argue that Judge Gambardella, in the course of granting summary judgment for Tehrani, should not have given collateral estoppel effect to the state court findings of fraud. I conclude that Judge Gambardella properly applied the law of collateral estoppel.

"The preclusive effect of a state court judgment in a subsequent

---

[13]   This theory is also improbably complex. If Judge Gambardella wished to rule against the Walterses, she had the power to do so; it did not require a to-and-fro shuttle maneuver with the state court.

federal lawsuit generally is determined by the full faith and credit statute, which . . . commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). Therefore, the New Jersey doctrine of collateral estoppel applies in this case.

In New Jersey, collateral estoppel "represents the 'branch of the broader law of res judicata which bars relitigation of *any issue* which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" *Tarus v. Borough of Pine Hill*, 916 A.2d 1036, 1050 (N.J. 2007) (quoting *Sacharow v. Sacharow*, 826 A.2d 710, 719 (N.J. 2003)).

> A party asserting collateral estoppel in New Jersey must show that:
>
> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (quoting *Twp. of Middletown v. Simon*, 937 A.2d 949, 954 (N.J. 2008)); *see also In re Docteroff*, 133 F.3d 210, 214–15 (3d Cir. 1997) (federal collateral estoppel allows a court to accept facts found by a previous court).

Thus a bankruptcy court deciding whether a debt is dischargeable may "through the doctrine of collateral estoppel . . . accept facts established by the prior state court record as evidence of non-dischargeability." Bankr. Op. 50:13–15. The doctrine of collateral estoppel, however, does not subsume the bankruptcy court's authority to decide whether a debt is non-dischargeable. That is, the bankruptcy court is not limited to "a review of the judgment and record in the prior

14

state-court proceeding when considering the dischargeability of . . . debt." *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979). Thus Judge Gambardella permissibly reserved "the ultimate determination regarding the debt's dischargeability" to herself. Bankr. Op. 50:11–12.

Judge Gambardella properly analyzed the elements of collateral estoppel, and she did not exceed her proper authority in accepting facts established by Judge Miller as evidence of non-dischargeability on the basis of fraud.

### i. *Identical issue (Element 1)*

Addressing the first element of collateral estoppel, Judge Gambardella correctly found that the state court and the bankruptcy court proceedings had in common a critical issue: whether the Walterses committed fraud. That issue, obviously relevant to a state action for fraud, is also central to the debt's dischargeability in bankruptcy. Bankr. Op. 51:3–7. The Bankruptcy Code provides that discharge is unavailable "from any debt . . . obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To establish such fraud, a party must show by a preponderance of the evidence that:

> (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; and (4) the Plaintiffs reasonably relied on the representation; and (5) the Plaintiffs suffered loss, which was proximately caused by the Debtor's conduct.

*In re Cohen*, 185 B.R. 180, 186 (Bankr. D.N.J. 1995) *aff'd*, 191 B.R. 599 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997) *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213 (1998).

The state court made a finding of actual fraud by the Walterses. Judge Miller held a hearing, heard testimony, and thoroughly analyzed

the evidence under each element of fraud. He found that the Walterses' fraud was "amply demonstrated." Bankr. Op. 56:24–25 (citing Proof Hearing Tr. 160). Indeed, Judge Miller found fraud "by clear and convincing evidence, not just a preponderance of the evidence." Bankr. Op. 52:1–4. Judge Gambardella was authorized to, and did, adopt Judge Miller's findings as to each element of fraud. She properly accepted Judge Miller's findings as to the issue of fraud, an issue central to the issue of dischargeability in the bankruptcy court.

### ii. *Actually litigated (Element 2)*

Addressing the second element of collateral estoppel, Judge Gambardella found that the issue of fraud was "actually litigated" in state court. Bankr. Op. 57:12–21.

The Walterses maintain that, because Judge Miller suppressed their defenses, the state court proceeding was not actually litigated on the merits. *Id.* 57:16–21. The Walterses did participate in the state court action, however: they filed an answer to the complaint, filed moving papers, communicated with opposing counsel, and "purportedly, in their view, attempted to comply with discovery orders." *Id.* 58:24–59:4. Judge Gambardella therefore found that the state court action was actually litigated and decided on the merits.

In support of that conclusion, Judge Gambardella persuasively cited *In re Docteroff*, 133 F.3d 210 (3d Cir. 1997), a case applying federal collateral estoppel principles. There, the United States Court of Appeals for the Third Circuit decided an issue very close to the one presented here: "whether a default judgment entered against a defendant in a fraud action as a sanction for the defendant's repeated and bad-faith refusals to comply with discovery requests collaterally estops the defendant from claiming that the debt underlying the judgment is dischargeable in bankruptcy." *Id.* at 212–13. That defendant, Docteroff, had been sued for

fraud in connection with a debt in federal court in the Western District of Washington. Because of Docteroff's willful and bad faith "non-compliance with discovery rules and Court orders," the district court entered default judgment against Docteroff on the issue of liability. *Id.* at 213–14 (internal quotation and citation omitted). Before the district court could proceed with a trial to determine damages, Docteroff filed for bankruptcy in the U.S. Bankruptcy Court for this district, seeking to have the debt declared dischargeable. *Id.* at 214. The plaintiffs then filed an adversary action against Docteroff, asking the bankruptcy court to give collateral estoppel effect to the Western District of Washington's determination of fraud and find the debt non-dischargeable. *Id.* The bankruptcy court granted summary judgment to the plaintiffs, giving the Western District of Washington's decision collateral estoppel effect. *Id.* This district court and the Third Circuit affirmed the bankruptcy court's decision.

The Third Circuit held that "Docteroff had every opportunity to fully and fairly litigate any relevant issue in the district court in Washington," and that he had "simply elected not to comply with court orders." *Id.* at 215. That selective participation distinguished *Docteroff* from "a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defendant the lawsuit, or some other reason." *Id.* Rather, Docteroff had "participated extensively in the lawsuit," in which "[h]e filed an answer, noticed [a] deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel." *Id.* Therefore, the Third Circuit "[did] not hesitate in holding that a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application." *Id.* (citing *In re Daily*, 47 F.3d 365 (9th Cir. 1995); *In re Bush*, 62 F.3d 1319 (11th Cir. 1995)).

This case is identical to *Docteroff* in every way that matters. In state court, the Walterses were given ample warning and multiple opportunities to comply with discovery procedures, but chose not to do so. As a result, they were eventually precluded from presenting their defenses. The Walterses, like the defendant in *Docteroff*, actively participated in the state court proceeding. They filed an answer, filed moving papers, communicated with opposing counsel, and engaged in discovery disputes. Bankr. Op. 58:24–59:4. Under those circumstances, it was proper for Judge Gambardella to find that the Walterses had actually litigated the case in state court for purposes of collateral estoppel. "To hold otherwise would encourage behavior similar to [the Walterses'] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *In re Docteroff*, 133 F.3d at 215.[14]

New Jersey collateral estoppel principles are entirely consonant with the *Docteroff* holding. A New Jersey court will apply collateral estoppel "only when the defendant in the initial action had the opportunity to fully and actively participate in the actual trial, and the manner in which the trial was conducted merited a bar to relitigation of the issues determined." *In re Azeglio*, 422 B.R. 490, 495 (Bankr. D.N.J. 2010) (surveying New Jersey cases). This requires that "a party has had his day in court on an issue" and that "a judgment on the merits is entered in an adversarial context." *Id.* (internal quotations omitted) (quoting *Zirger v. General Accident Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996); *Slowinski v. Valley National Bank*, 624 A.2d 85, 90–91 (N.J. Super. Ct. App. Div. 1993). True, New Jersey courts have denied

---

[14]    This is as good a place as any to address the general contentions, scattered throughout the Walterses' papers, that the state proceedings were generally unfair or improper. I find, as did Judge Gambardella, that the Walterses have made no showing whatever of any impropriety in the state court proceedings. Bankr. Op. 68:7–14.

collateral estoppel where the defaulting defendant did not have a full and fair opportunity to participate in the earlier proceedings. *See, e.g.*, *Slowinski*, 624 A.2d at 88–91 (finding collateral estoppel inapplicable where the named defendant in the previous action had not appeared at a proof hearing and where another defendant had not been a party to or in privity with a party to the previous action); *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1011–12, 1015 (N.J. 2006) (finding that an issue was not fully litigated before an administrative tribunal where "there was nothing in [the] record assuring that the . . . proceedings were recorded . . . that the witnesses were sworn or that the witnesses were subjected to cross-examination . . . that only competent evidence was received . . . [and] that the decision of the appeals examiner was fairly based on the proofs adduced before him"); *see also Gallo v. Tooley*, No. 06-02523 DHS, 2007 WL 1071945, at *1–2 (Bankr. D.N.J. Apr. 3, 2007) (applying New Jersey law and declining to give collateral estoppel effect to default judgment where a pro se defendant had filed an answer and participated in discovery, depositions, motion practice, and mediation, but had failed to appear at trial); *In re Azeglio*, 422 B.R. at 494–95 (finding that a New Jersey court would not grant collateral estoppel effect to a default judgment where there was "substantial participation in pretrial activity, including filing responsive pleadings and participating in depositions," but the defendant's attorney withdrew prior to trial, the defendant did not receive notice of the trial, and the defendant did not appear at the trial).

Here, by contrast, the Walterses had ample opportunity to fully and actively participate in the state court case. The default judgment against them was not a result of an attorney failure, of a lack of notice to them about any of the proceedings, or of their failure to attend a proof hearing. Rather, it was a result of their abuse of the state court process. That the Walterses squandered their opportunity to fully and actively

litigate their case does not warrant this Court's giving them another opportunity to do so.

The Walterses object further that they were denied the opportunity to seek relief from a state court order or judgment pursuant to N.J. Ct. R. 4:50-1. (That state rule is analogous to Fed. R. Civ. P. 60.) When the Walterses presented that motion to the state court, Judge Miller noted that Judge Gambardella had remanded the case to his court for the sole purpose of conducting a proof hearing, and he confined the proceedings to that. The state court case remained stayed for all other purposes. *See* Proof Hearing Tr. 17:3–15; *see also* Bankr. Pet. 10-22037 ECF No. 46-6 at 5. The Walterses then asked Judge Gambardella to grant permission for Judge Miller to hear their R. 4:50-1 motion. *See id.*, ECF No. 44. Judge Gambardella denied that motion on December 1, 2010. *See id.*, ECF No. 49. The Walterses object, but do not offer any substantial basis to conclude that the bankruptcy court committed legal error.

I do not think that Judge Gambardella's December 1, 2010 ruling rendered the state findings unworthy of deference. Recall that Judge Miller suppressed the Walterses' defenses only after affording them multiple opportunities to cure their discovery defaults, in accordance with State procedure. *See* N.J. Ct. R. 4:23-5; *see also* p.4 n.5, *supra*. He then heard their motion for reconsideration, and denied that. *See* Super. Ct. Mar. 5, 2010 Order. The Rule 4:50-1 motion, then, was to be the Walterses' third bite at the same apple. The Walterses protest supposed procedural irregularities, but they never timely submitted proof of compliance with their discovery obligations.

Collateral estoppel requires only that the prior proceeding have possessed "significant procedural and substantive safeguards." *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 661 (N.J. 2012) (internal quotation and citation omitted). Such prior proceedings need not have afforded the option of a motion to reopen judgment at all. Administrative

proceedings, for example, or a state Supreme Court order of disbarment, will suffice:

> New Jersey courts "accord administrative rulings that otherwise satisfy collateral estoppel standards preclusive effect if the proceedings provide 'significant procedural and substantive safeguards,' similar to those that are provided to litigants in courts of law."

*Feng Li v. Peng*, 516 B.R. 26, 45 n.2 (D.N.J. 2014) (disbarment by Disciplinary Review Board, affirmed by state Supreme Court) (quoting *Winters*, 50 A.3d at 661 (administrative disciplinary proceedings)). Denial of the opportunity to make an extraordinary motion to vacate judgment does not so undermine the prior proceeding as to compel the conclusion that the issue was not "actually litigated."

As *Olivieri* noted, the collateral estoppel doctrine "has its roots in equity." 897 A.2d at 1009 (internal quotation and citation omitted). It would be far from equitable to reward the Walterses' bad faith conduct in state court with another opportunity to litigate the issue of fraud in federal bankruptcy court. Therefore, Judge Gambardella properly found that for purposes of collateral estoppel, the Walterses had fully litigated the issue of fraud in state court.

### iii.  *Final judgment on the merits (Element 3)*

Addressing the third element of collateral estoppel, Judge Gambardella also properly found that the state court decision constituted a "final judgment" on the merits.

"'[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *In re Docteroff*, 133 F.3d at 217 (quoting Restatement (Second) of Judgments § 13 (1982)). A judgment is sufficiently final where there is nothing to indicate that the "court has any intention of revisiting the issue . . . , that its findings are

unreliable, that [the losing party] did not have sufficient opportunity to be heard before the court entered judgment, or that the . . . court gave insufficient consideration to the issue." *Id.* (citing *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)).

As in *Docteroff*, there is nothing here to suggest that Judge Miller's judgment was anything but final. The default was entered with due deliberation, after the Walterses were given multiple opportunities to comply with discovery obligations. Judge Miller held a proof hearing and delivered a thorough and well-reasoned opinion regarding his findings as to fraud and damages. He then denied a motion for reconsideration of that order. There is nothing to indicate that Judge Miller intended to revisit the issue. Therefore, Judge Gambardella properly found that Judge Miller's order was sufficiently firm to be given preclusive effect.

In short, Judge Miller's order was final.

### iv.  Determination of issue was essential to prior judgment (Element 4)

Addressing the fourth element of collateral estoppel, Judge Gambardella properly found that Judge Miller's determination of fraud was essential to his judgment.

Judge Gambardella lifted the stay on state court proceedings specifically to allow the state court case to proceed to judgment. Bankr. Op. 60:24–61:5. The state case did go forward, and Judge Miller found that the Walterses had "clearly" committed fraud. *Id.* 61:14–15; *see* Proof Hearing Tr. at 172. That determination was essential to the final judgment, which was a finding in Tehrani's favor on a claim of fraud.

### v.  Parties identical (Element 5)

The fifth element of collateral estoppel is that the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. Tehrani and the Walterses were themselves

parties to the state court proceeding. This element is satisfied.

I therefore affirm Judge Gambardella's finding that the five elements of collateral estoppel were satisfied. In connection with finding the debt non-dischargeable, Judge Gambardella properly gave collateral estoppel effect to the state court's finding of fraud.

### C. The Walterses' cross-motions

The Walterses challenge Judge Gambardella's denial of their cross-motions "to compel discovery or dismiss the case and for contempt of court, sanctions and damages." *See* Adv. 10-1945 ECF No. 11. Specifically, the Walterses moved: (1) "to compel discovery or dismiss the case for failure to provide discovery or for entry of default and default judgment, and for contempt of court, sanctions and damages for failure to provide discovery"; (2) "for relief from judgment or order"; and (3) "for contempt of court, sanctions and damages, against Nahid Tehrani and Joseph V. Meyers Esq., for violation of the automatic stay and for violation of Judge Gambardella's bankruptcy court order dated 7/16/10." *Id.*

As for the first motion, Judge Gambardella observed without contradiction that the Walterses' counsel "conceded that the debtors were no longer pursuing contempt or sanctions [for discovery violations] because [Tehrani], after the filing of the motion, provided answers in discovery as to the current adversary proceeding." Bankr. Op. 40:13–22 (noting that this cross-motion had been rendered moot). Because the Walterses do not state any specific reasons for their appeal of Judge Gambardella's denial of this first cross-motion, I do not address it any further.

As for the second motion, Judge Gambardella noted that the Walterses' counsel "clarified that they were seeking denial of summary judgment so that the debtors could go forward with a full hearing and

acknowledged that [this] cross-motion was more in the vein of [their] opposition to summary judgment . . . and not a request to set aside the state court order." Bankr. Op. 41:22–42:4. This, then, was *not* a version of the Rule 4:50-1 motion for relief from judgment that the Walterses had sought to assert in state court. Because the Walterses do not argue that Judge Gambardella misunderstood their counsel, I will likewise consider this cross-motion to be integral to their opposition to summary judgment, already discussed above.

As for the Walterses' third motion, which sought damages and sanctions against Tehrani and her counsel for violating the automatic stay, I affirm Judge Gambardella's denial. The Bankruptcy Code, 11 U.S.C. § 362(a)(1), provides that the filing of a bankruptcy petition automatically stays any other

> judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

The Walterses contend that Tehrani and her counsel violated the automatic stay in bankruptcy when they filed a claim with the New Jersey Lawyers' Fund for Client Protection and a grievance with the Office for Attorney Ethics regarding Karlene Rawle-Walters, who is an attorney. Adv. 10-1945 ECF No. 11-1 at 29–33. Relatedly, the Walterses argue that the actions of Tehrani and her counsel exceeded the scope of Judge Gambardella's order lifting the stay for the sole purpose of allowing the state case to proceed to judgment. Adv. 10-1945 ECF No. 11-1 at 31; *see In re Walters et al.*, Bankr. No. 10-22037 (RG) ("Bankr. Pet. 10-22037 ECF"), ECF No. 25.

I agree with Judge Gambardella that Tehrani's ethical complaints did not violate the automatic stay. The stay provision of the Code contains an exception for "the commencement or continuation of an

action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power." 11 U.S.C. § 362(b)(4.)

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101. That exception for governmental units is to be "construed broadly." *Penn Terra Ltd. v. Dep't of Envtl. Res., Com. of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984). The automatic stay is designed to give bankrupts relief from the demands of creditors and permit an orderly prioritization and disposition of claims against them, not to frustrate governmental functions.

The Office of Attorney Ethics and the New Jersey Lawyers' Fund for Client Protection are both entities of the Supreme Court of New Jersey. *See* New Jersey Judiciary, *Office of Attorney Ethics* (Apr. 13, 2015, 11:38 AM), http://www.judiciary.state.nj.us/oae/; New Jersey Judiciary, *New Jersey Lawyers' Fund for Client Protection* (Apr. 13, 2015, 11:38 AM), http://www.judiciary.state.nj.us/cpf/. Judge Gambardella therefore properly found that they are governmental units for purposes of the exception to the automatic stay provision. Bankr. Op. 66:1–19.

An ethical complaint is, of course, just that; it is a regulation of attorneys' professional behavior, not a claim for damages in the ordinary sense. A matter before the Lawyers' Fund for Client Protection, too, is an exercise of the state's police power. At any rate it is technically a claim on the Fund, not a claim for damages against the attorney. *See In re Wade*, 948 F.2d 1122, 1122–23 (9th Cir. 1991) (finding that disciplinary proceedings are exempted from the automatic stay, as they fall under the

police or regulatory powers); *See also In re Baillie*, 368 B.R. 458, 467–68 (Bankr. W.D. Pa. 2007) *aff'd in part sub nom. Pa. Lawyer's Fund for Client Sec. v. Baillie*, No. 07CV1050, 2007 WL 2875501 (W.D. Pa. Oct. 3, 2007) (finding that proceedings before the Pennsylvania Lawyers Fund for Client Security were not "against the debtor," and thus did not violate the automatic stay; and, even assuming that such actions were "against the debtor," the proceedings were an exercise of "police or regulatory powers" that were exempt from the automatic stay); *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997), *as amended on denial of reh'g* (Dec. 30, 1997) (finding government actions to be exempt from the automatic stay when they (1) are not primarily related "to the protection of the government's pecuniary interest in the debtor's property," but rather "to matters of public safety and welfare and (2) "effectuate public policy" rather than "adjudicate private rights"); *In re Minnich*, 449 B.R. 679, 685–86 (Bankr. E.D. Pa. 2011) (using the *In re Universal Life Church, Inc.* test to conclude that the IRS's suspension of a debtor's participation in an electronic filing program was exempt from the automatic stay).

I will therefore uphold Judge Gambardella's order declining to impose sanctions against Tehrani and her counsel for filing claims with the Office of Attorney Ethics and the New Jersey Lawyers' Fund for Client Protection.

## IV.   CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

Dated: April 21, 2015

**Kevin McNulty**
**United States District Judge**

26